UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IVONNE BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:13-CV-4819-G |
| ATRIUM WINDOWS AND DOORS, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant Atrium Windows and Doors, Inc. ("Atrium") for summary judgment (docket entry 19). For the following reasons, the motion is granted.

### I. BACKGROUND

Atrium, a window and door manufacturer, is headquartered in Dallas, Texas. Brief in Support of Atrium Windows and Doors, Inc.'s Motion for Summary Judgment ("Motion") at 6 (docket entry 20).

On May 28, 2012, Ivonne Brown ("Brown") began working for Atrium as Director of Human Resources at its North Texas facility. *Id.*; Plaintiff's Original

Complaint ("Complaint") ¶ 4.01 (docket entry 1).  Brown came to Atrium with extensive experience in human resources, specifically with handling leave policies and procedures under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (FMLA").  Motion at 6 ("In at least four . . . prior positions, as well as at Atrium, Brown managed her employers' FMLA program and handled leave requests.").  At Atrium, Brown reported directly to Senior Vice President of Human Resources Donna Manchester ("Manchester").  *Id.* at 7; Complaint ¶ 4.02.

On March 4, 2013, Ali Fami ("Fami") began work at Atrium as plant manager.  Motion at 7.  Brown's role required her to work closely Fami.  *Id.*  The relationship between Brown and Fami proved tenuous.  For example, Fami requested that Brown arrive at work earlier; Brown disagreed with Fami's leadership style and decisions, and she was unhappy with how Fami treated employees at the plant.  *Id.* at 7-8.  Brown brought the situation to Manchester's attention, which ultimately resulted in a finding that no hostile work environment existed in the workplace.  *Id.* at 8.  Brown was dissatisfied with the handling of her complaints.  *Id.*

On May 1, 2013, Fami sent Brown an email as Brown had not yet arrived by her agreed-upon start time, requesting to speak with her regarding an employee injury.  *Id.*  The email read as follows.

> You were going to give me an update on the lady that went to [the] hospital from 5700 line Before the end of the day yesterday.  I looked for you this morning, the HR staff told

> me you are not in yet.  Please look me up as soon as you
> get in for [an] update, I am in my office.

*Id.*; Appendix of Evidence to Atrium Windows and Doors, Inc.'s Brief in Support of its Motion for Summary Judgment ("Appendix") at App. 144 (docket entry 21). Eighteen minutes later, Brown forwarded Fami's email to Manchester with the following notation ("May 1 email").

> Before you receive a call from [Fami] -- I did run about 15
> minutes late this morning.  My sister-in-law notified me
> this morning that my mother is in the hospital and it
> doesn't look good.  (It was difficult to hear. . .)  I may have
> to go to El Paso (that's where my parents live) in the near
> future.  My sister lives in Germany and I would like to
> coordinate with her, nonetheless I may have to pick-up and
> leave if it turns for the worse.  My father is 100% disable
> [sic] and will need a lot of help.  I should know more by
> tonight.  I'll keep you posted.

*Id.*; *see also* Appendix at App. 144 (docket entry 21).

Manchester responded, "I am so sorry to hear that, Ivonne.  This must be a difficult time for you and your family.  Please accept my sympathies." Motion at 9; Appendix at App. 144.  Brown did not keep Manchester posted.  In fact, Brown never again mentioned her mother's condition or the need to take FMLA leave while at Atrium, nor did she submit an FMLA leave request form as required by Atrium's policy.  Motion at 9.

One week later, on May 6 and again on May 7, Atrium posted online advertisements for Brown's job position, allegedly due to a concern that Brown would

leave her job abruptly -- a concern brought on by multiple comments by Brown that she would resign.  *Id.*  According to Manchester, she wanted to be prepared to replace Brown should the need arise without warning.  *Id.* at 9-10.

On May 14, 2013, Brown and Manchester met to discuss the job postings.  *Id.* at 10.  In that meeting, Manchester coached Brown in an effort to improve Brown's relationship with Fami because Manchester hoped that Brown would not leave her job.  *Id.* at 10.  Nevertheless, that afternoon Brown resigned in an email to Manchester citing  "hostile work environment" as her reason for leaving.  Appendix at App. 139 ("As a follow-up to our conversation today I will be resigning effective today.  I can no longer work in a hostile work environment . . . Ali Fami has created.").

On December 10, 2013, Brown sued Atrium for interference and discrimination under the FMLA.  *See generally* Complaint.  Brown alleges that she "was about to be entitled to leave to care for her parent . . . when [Atrium] interfered with [Brown's] FMLA benefits by firing her."  *Id.* ¶ 5.04.

## II.  ANALYSIS

### A.  Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact, and that the moving party is

entitled to judgment as a matter of law. FED. R. CIV. P. 56.[1] "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant make such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. See *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant make this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 323-24. To carry this burden, the opponent must do more than simply show some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, she must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. All of the evidence must be viewed, however, in a light most favorable to the motion's opponent. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

---

[1] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

B. FMLA Claims

The FMLA provides eligible employees with a total of twelve weeks of leave in any twelve-month period under certain circumstances, such as to care for a parent with a serious health condition. 29 U.S.C. § 2612(a)(1). Atrium maintains an internal FMLA leave policy as required by the act. Motion at 6. "The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers." *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (internal quotations omitted). The first set of provisions are "prescriptive: they create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain circumstances." *Id.* The second set of provisions are "proscriptive: they bar employers from penalizing employees and other individuals for exercising their rights." *Id.*

The proscriptive provisions of the FMLA are set forth in 29 U.S.C. § 2615. First, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA. *Id.* § 2615(a)(1). Second, "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA. *Id.* § 2615(a)(2). Finally, Section 2615(b) prohibits persons from interfering with proceedings or inquiries related to the FMLA.

1. *FMLA claim under Section 2615(a)(1)*

Brown has brought a claim under Section 2615(a)(1), which prohibits an employer from "interfering" with an employee's ability to take FMLA leave. To make out a claim under Section 2615(a)(1), "a plaintiff must show that (1) she is an eligible employee under the FMLA, (2) the defendant is an employer subject to the requirements of the FMLA, (3) she was entitled to FMLA leave, (4) she gave notice to the defendant of her intention to take FMLA leave, and (5) the defendant denied her the benefits to which, under the FMLA, she was entitled." *Morgan v. The Neiman-Marcus Group, Inc./Neiman-Marcus Direct*, No. 3:05-CV-0079-G, 2005 WL 3500314, at *4 (N.D. Tex. Dec. 20, 2005) (Fish, Ch. J.).

Under the FMLA, an "eligible employee" is one who has been employed for at least twelve months, and who has worked for at least 1,250 hours with her current employer. 29 U.S.C. § 2611(2)(A). The determination of whether an employee is eligible must be made as of the date leave commences. 29 C.F.R. § 825.110(d). There is no claim under the FMLA when an employee is ineligible at both the time the employee provides notice of her intent to take leave, and the time the leave is to be taken. *Amsel v. The Texas Water Development Board*, 464 Fed. Appx. 395, 401 n.7 (5th Cir. 2012). However, an employee who gives 30 days' notice may be entitled to FMLA leave if the employee would be eligible when the leave will *commence*, even if

the employee is not eligible at the time the notice is given. *Gleaton v. Monumental Life Insurance Company*, 719 F. Supp.2d 623, 629 (D.S.C. 2010).

Brown started work at Atrium on May 28, 2012, and she resigned on May 14, 2013. Thus, Brown would have worked the requisite twelve months, thereby becoming an eligible employee, on May 28, 2013. Brown asserts that her May 1 email was her "30-days notice" to take FMLA leave after May 28, 2013, although she gave no indication in the email of when the leave would commence. Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support ("Response") at 8-9, 11 (docket entry 22). Brown relies on 29 C.F.R. § 825.302, entitled "Employee notice requirements for foreseeable FMLA leave," for the argument that she was required to give 30 days advance notice before taking leave. Response at 11. As the title suggests, this 30-day requirement is for leave that is foreseeable "based on an expected birth, placement for adoption or foster care, [or] planned medical treatment for a serious health condition of the employee or of a family member . . . ." 29 C.F.R. § 825.302(a). The employee need not expressly assert her rights under the FMLA nor explicitly mention "FMLA" in her notice, and the burden is on the employer to inquire further of the employee if it has insufficient information to determine if the request is for FMLA leave. *Id.* § 825.302(c). On the other hand, the employee must provide enough information to "reasonably apprise her employer" that the leave could potentially fall under the FMLA. *Lanier v.*

*University of Texas Southwestern Medical Center*, 527 Fed. Appx. 312, 316 (5th Cir. 2013). The Fifth Circuit "does not apply categorical rules for the content of the notice; instead [it] focus[es] on what is 'practicable' based on the facts and circumstances of each individual. An employer may have a duty to inquire further if statements made by the employee warrant it, but 'the employer is not required to be clairvoyant.'" *Id.* (quoting *Manuel v. Westlake Polymers Corporation*, 66 F.3d 758, 764 (5th Cir. 1995) and *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir.), *cert. denied*, 525 U.S. 826 (1998)).

Atrium contends that "Brown had extensive experience managing FMLA programs and leave requests and therefore knew how to request leave." Motion at 14. The court agrees. Nothing in the May 1 email suggests that Brown's mother had planned medical treatment that would require FMLA leave. *See* Appendix at App. 144. To the contrary, the language of the email appears to explain Brown's tardiness and indicates a fluid situation where Brown's mother might get worse, might get better, or, possibly, might pass away suddenly. *Id.* The email cannot reasonably be construed as an attempt to provide 30 days advance notice of the need for foreseeable FMLA leave. Therefore, without the email specifying a date as to when the leave would begin, the inability to interpret the email as 30 days advance notice, and no actual leave having been taken by Brown before her separation with the company,

Brown's argument that she is an eligible employee is critically undermined.  *See* Motion at 13.

Even if it is assumed *arguendo* that Brown was an eligible employee, vague statements to an employer regarding the possibility of leave do not satisfy the FMLA notice requirement.  For example, in *Lanier*, *supra*, the plaintiff's text message informing her employer that her father was in the emergency room and requesting to be taken off call that evening was insufficient notice to invoke the FMLA.  *Id.* at 316-17.  The court rejected the plaintiff's argument that the employer "should have inquired further since he knew that [plaintiff's] father was over 90 years of age and in poor health. . . ."  *Id.*  The court noted that the plaintiff "had taken FMLA leave in the past and was familiar with the proper way to request it, yet she did not do so here."  *Id.*  Additionally, in *Wilson v. Noble Drilling Services, Inc.*, 405 Fed. Appx. 909 (5th Cir. 2010), the plaintiff failed to request leave by not affirmatively informing his employer of his intention to take leave, "only that he 'might' need to take leave and that there was 'possibility' that he would need to take leave."  *Id*. at 913.  The court held these comments insufficient to put the employer on notice of the need for FMLA leave, and that the plaintiff did not inform the employer of the "'anticipated timing and duration' of any leave."  *Id*. (quoting 29 C.F.R. § 825.302(c)).  Finally, in *Seaman v. CSPH, Inc.*, 179 F.3d 297 (5th Cir. 1999), the court held that the plaintiff did not provide his employer with requisite notice of FMLA leave when he told his supervisor

that "he might be suffering from bipolar disorder and needed time off to see a doctor," yet "he never scheduled a doctor's appointment . . . nor did he request leave for a certain day or period as a follow up to this conversation." *Id.* at 302.

Brown's May 1 email is similarly insufficient to satisfy the FMLA notice requirement. Brown was extremely familiar with Atrium's policy for requesting FMLA leave, yet she did not comply with the requisite procedure, and she offers no evidence that an unusual circumstance existed which prevented her from doing so. *See* 29 C.F.R. §§ 825.302(d), 825.303(c). Brown provided no indication in the email of the "anticipated timing and duration" of the leave, nor did she ask for time off for a certain day or period of time. See *id.* § 825.302(c). Additionally, the mention of possibly having to "pick-up and leave if it turns for the worse" is not sufficient notice to place the burden on Atrium to inquire further whether FMLA leave is being sought. See *Lanier*, 527 Fed. Appx. at 316-17. Finally, and most importantly, Brown admits that she never requested FMLA leave while she was at Atrium, only that she intended to request leave once she was eligible. *See* Appendix at App. 122. Not only did she not request FMLA leave, she did not request leave of any kind, simply stating that she "should know more" later that night and that she'll "keep [Manchester] posted." See *id.* at App. 144. This clearly is not sufficient notice to Atrium. Brown never requested FMLA leave, she never attempted to take FMLA leave, and she was never an eligible employee while working for Atrium, thus Brown was never entitled

to FMLA benefits. As a result, Brown's claim under Section 2615(a)(1) fails, and summary judgment on this claim is granted.[2]

### 2. *FMLA claim under Section 2615(a)(2)*

Brown also has brought an FMLA claim under Section 2615(a)(2), which bars employers from discharging or discriminating against any individual who exercises FMLA-protected rights. *Amsel*, 464 Fed. Appx. at 401. "When an employee claims that an employer has punished her for exercising her right to take FMLA leave, that claim is analyzed under the *McDonnell Douglas* framework." *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 768 (5th Cir. 2001). To make out a *prima facie* case under Section 2615(a)(2), the plaintiff must show that (1) she was protected under

---

[2] Even if it is assumed *arguendo* that Brown was an eligible employee and even if she was constructively terminated (as opposed to having resigned), "[her] termination would not violate [her] prescriptive rights under the FMLA because '[a]n employee who requests or takes protected leave under the FMLA is not entitled to any greater rights or benefits than [s]he would be entitled to had [s]he not requested or taken leave.'" *Jehling v. A.H. Belo Corporation*, No. 3:11-CV-1258-B, 2013 WL 5803813, at *16 (N.D. Tex. Oct. 28, 2013) (Boyle, J.) (quoting *Grubb v. Southwest Airlines*, 296 Fed. Appx. 383, 391 (5th Cir. 2008)). Thus, as discussed *infra*, because Atrium had a legitimate, non-retaliatory reason for "terminating" Brown, her separation would not be an interference with the attempted exercise of her eventual right to take FMLA leave. Because Brown does not provide sufficient evidence to satisfy the eligible employee, notice, and denial of benefits elements needed to prevail on an interference claim under the FMLA, the claim must fail as a matter of law. See Motion at 13 (quoting *Maldonado v. Frio County, Texas*, Civ. A. SA-02-CA1046XR, 2004 WL 1304951, at *4 (W.D. Tex. June 1, 2004) ("[T]he only interference or denial claim Plaintiff could state is based on the fact that she was terminated before she was scheduled to begin her leave. . . . The Court concludes that when Plaintiff was fired, she was no longer an eligible employee, and thus Defendant did not unlawfully deny her or interfere with her rights under the FMLA.")).

the FMLA; (2) she suffered an adverse employment decision; and (3) either (a) she was treated less favorably than an employee who had not requested leave under the FMLA, or (b) the adverse decision was made because she took FMLA leave. *Id.* Once the plaintiff has made out a *prima facie* case, the burden shifts to the defendant to "articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action." *Id.* If the defendant successfully meets this burden, then the plaintiff must show by a preponderance of the evidence that the defendant's reason is pretextual. *Id.* On the other hand, the "mixed-motive framework" is used when the plaintiff concedes that discrimination was one -- but not the only -- motivating factor for termination. *Richardson v. Monitronics International, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). Nearly identical to the *McDonnell Douglas* test, the distinguishing factor in the mixed-motive framework is that instead of proving that the employer's nondiscriminatory reason is a pretext for discrimination, the employee may prove that the employer's reason was "but one of the reasons for its conduct, another of which was discrimination." *Id.* The employer's final burden is "to prove that it would have taken the same action despite the discriminatory animus." *Id.* Ultimately, Brown must show that "but for filing for FMLA leave, she would not have been terminated." *Woodson v. Scott and White Memorial Hospital*, 255 Fed. Appx. 17, 19 (5th Cir. 2007) (per curiam).

a. Protection Under the FMLA

The fact that Brown was not yet eligible for leave is not determinative of whether she was protected under the FMLA for "an employee may bring a retaliation claim under FMLA if the employee was terminated prior to becoming eligible for FMLA leave, but the employee declared an intention to take leave more than one year after employment commenced." *Gleaton*, 719 F. Supp. 2d at 629. Therefore, had Brown requested leave to begin after she became eligible, her status as a "non-eligible employee" at the time of her separation from the company would not prevent her from prevailing on a retaliation claim.

As discussed *supra*, the flaw in Brown's claim of discrimination is that she never requested nor attempted to take FMLA leave. An employee informing her supervisor of her mother's illness and that she might at some indefinite time need leave for some unspecified period, but that the employee would "keep her posted," would not put a reasonable employer on notice that the employee is requesting leave of any kind. See *Wilson*, 405 Fed. Appx. at 913 (holding that an equivocal statement regarding the possibility of needing to take leave at some unknown date is not protected activity).

b. Adverse Employment Decision

Brown claims that she suffered an adverse employment decision because she was "constructively discharged" when Manchester advertised Brown's job position one week after Brown's alleged "notice" of FMLA leave. Response at 9. Specifically,

Brown contends, when Brown and Manchester met regarding the job posting, Manchester confirmed that the posting was for Brown's job, "so [Brown] considered that she had indeed been constructively discharged and left the workplace." *Id.* This action alone does not amount to a "constructive discharge." "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *Hunt*, 277 F.3d at 771. Factors courts consider when determining whether an employee has been constructively discharged include "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not." *Id.* at 771-72 ("The question is not whether [the employee] felt compelled to resign, but whether a reasonable employee in her situation would have felt so compelled.").

Brown has not produced any evidence raising a genuine issue of material fact to suggest a reasonable employee in her position would have felt compelled to leave because of the job postings. She did not receive a demotion, nor a reduction in salary or job responsibilities, nor was she reassigned to menial or degrading work. The claim is further weakened in light of the undisputed evidence that Brown twice suggested previously that she would resign, and at the same meeting Brown and Manchester

discussed the job postings, Manchester encouraged Brown to work out her issues with Fami. *See* Motion at 17-18.

Any adverse employment decision Brown may have suffered was not made because she took, or attempted to take, FMLA leave. Brown has offered no evidence that she was treated less favorably than an employee who had not requested FMLA leave nor that any adverse decision was made because she attempted to take FMLA leave. Brown relies almost entirely on the job postings as evidence of her "constructive discharge," only mentioning the issues with Fami to satisfy the "motivating factor test." See, *e.g.*, Response at 12-13. However, the evidence suggests that Brown's reason for leaving was the "hostile work environment," as reflected in her resignation email and deposition testimony. See, *e.g.*, Appendix at App. 124, 139. Brown stated that the "hostile work environment," the "scrutiny," and her supervisors "not do[ing] anything about it" -- "the whole situation" supports her claim for FMLA retaliation. *Id.* at App. 124. Yet, she offers no evidence of a causal connection between the hostile work environment resulting in her "constructive discharge" and her seeking FMLA leave. To the contrary, she asserts that the online advertisements for her job forced her to leave, and the close temporal proximity between the job postings and the May 1 email provide "sufficient evidence of retaliation." Response at 13. However, the reasonable conclusion is that the job postings came as a result of, and not in contribution to, Brown's open dissatisfaction

with her work environment, and likewise not as a result of Brown requesting leave. Therefore, Brown has failed to establish a *prima facie* case of discrimination.

### c. Legitimate, Nonretaliatory Reason for Employment Action and Pretext

Even if Brown had made a *prima facie* case of discrimination, Atrium has a legitimate, nonretaliatory reason for the "employment action." Atrium claimed it advertised the position because it feared that Brown would voluntarily resign, and the company did not want to be left without a replacement. Motion at 18. Furthermore, Brown has failed to show that discriminatory animus is even one reason for the "employment action." Brown seems to suggest that she meets the motivating factor test because, along with providing notice of her intent to take FMLA leave, she was terminated "for attempting to defend the female employees at the plant from harassment by the plant manager, Ali Fami." Response at 12. Even if the evidence were sufficient to support this assertion, the fact that there may have been an alternate motivation does not itself prove that retaliation was *also* a motivation. Other than the close temporal proximity between the May 1 email and the job postings, Brown simply has not proffered any evidence to show that Atrium's alleged employment action was motivated by her notice to take FMLA leave, and temporal proximity alone is not sufficient to prove mixed motives or pretext. See *Woodson*, 255 Fed. Appx. at 20; *see also* Atrium Windows and Doors, Inc.'s Reply in Support of its Motion for Summary Judgment at 5 (docket entry 25).

Manchester testified that Atrium posted the job listing out of concern that Brown would resign, and Manchester felt she "needed to be prepared in the event that [Brown] left [her] in a lurch." Appendix at App. 11. Brown disputes that Atrium advertised the position in the hope that Brown would stay with the company, Response at 13, but she fails to explain why Atrium's asserted purpose is not a "business reason" nor why its advertising of a job opening, should the position become vacant (while still hoping to retain the current employee), is so "nonsensical."

Even when the evidence is viewed in the light most favorable to Brown, she fails to provide sufficient evidence for a reasonable factfinder to find for her on her FMLA discrimination claim. Therefore, her discrimination claim fails as a matter of law.

### III.  CONCLUSION

For the reasons set forth above, Atrium's motion for summary judgment is **GRANTED**.  Judgment will be entered for Atrium.

**SO ORDERED.**

April 16, 2015.

           */s/ A. Joe Fish*
           **A. JOE FISH**
           **Senior United States District Judge**